UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN YESKA,

        *Plaintiff*,

v.

    CASE NO. 16-12395
    DISTRICT JUDGE THOMAS L. LUDINGTON
    MAGISTRATE JUDGE PATRICIA T. MORRIS

EXPERIAN INFORMATION SOLUTIONS, INC.,
EQUIFAX INFORMATION SERVICES, LLC;
TRANS UNION, LLC,
AMERICAN STUDENT ASSISTANCE CORPORATION,
and ACCESS GROUP, INC.,

        *Defendants*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON ACCESS GROUP, INC.'S MOTION TO DISMISS (Doc. 16)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Access Group, Inc.'s Motion to Dismiss Counts V and VI (Doc. 16) be **GRANTED.**

### II.    REPORT

#### A.    Introduction

On June 7, 2016, Plaintiff John Yeska ("Plaintiff") filed this suit in state court alleging that Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Trans Union LLC ("Trans Union"), Kentucky Higher Education Student Loan Corporation ("KSLC"), American Student Assistance Corporation ("ASAC"), and Access Group, Inc. ("Access Group") reported—or were involved in reporting—certain trade lines with delinquencies occurring more than seven years ago in

1

violation of the Fair Credit Reporting Act ("FCRA"). (Doc. 1, Ex. B). On June 24, 2016, Trans Union filed a notice of removal, (Doc. 1), and on June 30, 2016 District Judge Ludington referred all pretrial matters to the undersigned Magistrate Judge (Doc. 6). On August 2, 2016, KSLC was terminated from the case. Trans Union filed an Answer on July 13, 2016, (Doc. 11), on July 18, 2016 Equifax filed an Answer, (Doc. 13), and Access Group filed the instant Motion (Doc. 16). Plaintiff filed a response to that motion on August 11, 2016, (Doc. 29), to which Access Group filed a reply on August 25, 2016 (Doc. 35).

**B.     Background**

Plaintiff alleges that Equifax, Experian, and Trans Union reported various trade lines with delinquencies occurring more than seven years ago ("Errant Trade Lines") in violation of the FCRA. (Doc. 1, Ex. B at 3-4). He notes that he opened these trade lines to pay for college, but "never made any payments" after his graduation in 2006. (Doc. 1, Ex. B at 4). He suggests, however, that in February 2016 he noticed the reporting of these Errant Trade Lines and disputed them with Experian, Equifax, and Trans Union ("Credit Reporting Agencies" or "CRAs"). (*Id.*). Further, he alleges that "[u]pon information and belief, the CRAs forwarded [his] consumer disputes to . . . Access Group." (*Id.*).

On March 24, 2016, Plaintiff received a letter from Access Group indicating the loan defaulted on May 29, 2009, but he asserts that "the loan defaulted much earlier as [he] never made any payments on the loans, which are the subject of the Errant Trade Lines, and he graduated from college in 2006." (*Id.*). He further asserts that in "late March 2016," he obtained credit files and "noticed" that "Access Group retained the Errant Trade Lines." (*Id.*). He "submitted another letter to the CRAs disputing the Errant Trade Lines," in which

2

he said he "first became delinquent" in 2007, and requested that the Errant Trade Lines be removed from his credit files. (*Id.*). As before—"[u]pon information and belief"—he says the CRAs forwarded his consumer disputes to Access Group. (Doc. 1, Ex. B at 5). And on April 22, 2016, he asserts that he received Equifax's investigation results, revealing that "Access Group retained its two Errant Trade Lines." (*Id.*).

### C. Motion To Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a

right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.

4

1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

**D.     Analysis**

Access Group contends, generally, that Plaintiff's Complaint: (1) fails to adequately plead an injury in fact; (2) fails to allege that Access Group received notice of Plaintiff's dispute from a credit reporting agency; (3) fails to allege actual damages as required to state a claim for negligent violation of the FCRA; and (4) fails to allege that Access Group's conduct in response to Plaintiff's dispute exhibited reckless disregard of its duties as is required to state a claim for willful violation of the FCRA. *See generally* (Doc. 16).

The claims presented in Counts V and VI allege negligent and willful violations of 15 U.S.C. §1681s-2(b) because, Plaintiff contends, Access Group failed to undertake an investigation of his dispute.[1] The disputed information that Plaintiff refers to as the Errant Trade Line is information `covered by §1681c(a)(4) which provides that "no consumer

---

[1] Plaintiff does not allege that Access Group failed to provide accurate information under §1681s-2(a) likely because there is no private cause of action for consumers against furnishers of information for failure to comply with §1681s-2(a). *Boggio v. USAA Fed. Sav. Bank*, 636 F.3d 611, 616 (6th Cir. 2012); *Ruggiero v. Kavlich*, 411 F. Supp. 2d 734, 736 (N.D. Ohio 2005).

reporting agency may make any consumer report containing any of the following . . . (4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." Plaintiff does not raise his claim directly under §1681c(a)(4) since that subsection applies only to CRAs but rather asserts that Access Group did not conduct a proper investigation to direct a CRA to remove this improper information.

Under Count V, Plaintiff's Complaint alleges that "[a]fter being informed by Equifax of Mr. Yeska's consumer dispute to the Errant Trade Line, Access Group negligently failed to conduct a proper investigation of Mr. Yeska's dispute as required by 15 USC 1681s-2(b)[,]" and "failed to direct Equifax to remove the Errant Trade Lines" which are "inaccurate and create a misleading impression." (Doc. 1 ¶¶ 42-44).

Under Count VI, Plaintiff alleges that "[a]fter being informed by Equifax of Mr. Yeska's consumer dispute to the Errant trade Line, Access Group willfully failed to conduct a proper investigation of Mr. Yeska's dispute" and "willfully failed to review all relevant information available to it and provided by Equifax as required by 15 USC 1681s-2(b)." (Doc. 1 ¶ 49-50).

Under both Counts V and VI, Plaintiff contends that he "has suffered damages, mental anguish, suffering, humiliation and embarrassment." (Doc. 1 ¶¶ 45, 51).

### 1. Injury in fact

As to injury in fact, Access Group argues that the two disputed trade lines were deleted before Plaintiff filed the instant Complaint and that Plaintiff was notified, via letter dated March 24, 2016, that the disputed trade lines had been deleted. (Doc. 16 at ID 192, 197). The instant lawsuit was filed on June 7, 2016. Access Group also contends that

Plaintiff "does not plead any specific adverse event arising from the allegedly errant reports, such as rejection of a mortgage application or increased insurance premiums" but instead "alleges unspecified 'damages,' and offers only vague references to mental anguish, suffering, humiliation and embarrassment.' Compl. ¶¶ 45, 51." (Doc. 16 at ID 197). Finally, Access Group argues that Plaintiff also fails to meet Article III standing requirements because "the remedy Plaintiff seeks was afforded to him more than two months before he brought suit." (Doc. 16 at ID 197-98).

Plaintiff responds that he has standing, his trade lines were not deleted before March 24, 2016, that "whether or not AGI's trade line was deleted prior to the filing of the Complaint is not relevant," because "AGI violated the FCRA when it failed to conduct a proper investigation of Mr. Yeska's disputes or direct Equifax to correct the inaccuracies on its trade lines within 30 days of Equifax's receipt of Plaintiff's dispute letter." (Doc. 29 at ID 266-68).

As the Sixth Circuit has indicated with respect to claims under the FCRA, no Article III standing issue arises where: (1) the plaintiff seeks to vindicate statutory rights; (2) the plaintiff is "among the injured, in the sense that she alleges the defendants violated *her* statutory rights"; and (3) the plaintiff complains of an "individual, rather than collective, harm." *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 705 (6th Cir. 2009) (quoting *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009)) (internal quotation marks omitted). As in *Beaudry*, the "nexus between" Plaintiff here and the alleged "legal violation" of failing to accurately report Plaintiff's credit information to Equifax "suffices to sustain [his] statutorily created right." *Id.*

7

## 2. Notice of a dispute from a Credit Reporting Agency

The FCRA creates a private right of action against a furnisher who fails to satisfy one of the five duties identified in §1681s-2(b)(1)(A)-(E). Under §1681s-2(b)(1)(A), "the investigation an information furnisher undertakes must be a reasonable one." *Boggio*, 696 F.3d at 616. Under §1681s-2(b)(1)(B), "first and foremost a furnisher must review all relevant information provided to it by a CRA regarding a dispute" and "the nature and specificity of the information provided by the CRA to the furnisher may affect the scope of the investigation required of the furnisher." *Id*. at 617. Under §1681s-2(b)(1)(C), "this reporting duty requires a furnisher to respond to a CRA regarding the results of the furnisher's investigation, irrespective of the outcome of the investigation." *Id*. Under §1681s-2(b)(1)(D), "'if the investigation finds that the information is incomplete or inaccurate,' then the furnisher must 'report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.'" *Id*. This could include information that is technically correct but is provided in a manner that creates a materially misleading impression or omits information that renders the information incomplete or that could materially alter how the reported debt is understood. *Id*. at 617-18. Finally, under §1681s-2(b)(1)(E), a "furnisher has a duty to modify, delete, or block its original reporting if it discovers, upon investigation, that it can no longer verify the consumer information it originally supplied to a CRA." *Id*. at 618.

If a consumer demonstrates that a furnisher was negligent in breaching one of these five duties, then he may recover actual damages under §1681o. If a consumer establishes that a furnisher willfully violated one of the five duties, then he may recover actual or

statutory damages and punitive damages under §1681n. *See Boggio*, 696 F.3d at 618. Willfulness covers knowing and reckless violations and does not require a showing that the furnisher intentionally "put [the consumer] in his situation." *Id*. at 620. Costs and reasonable attorney fees are authorized under both sections for negligent and willful conduct. *Id*. at 618.

Of particular import, "the plaintiff must show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed." *Id.* at 853-54; *Elsady v. Rapid Global Business Solutions, Inc.*, 2010 WL 742900, at *3 (E.D. Mich. Feb. 26, 2010) ("[Plaintiff's] complaint alleges that [he] contacted both [the CRA] and [the furnisher] directly to dispute the information that [the furnisher] provided to [the CRA]; however, it does not allege that [the CRA] relayed that information [to the furnisher]. . . . Further, there is nothing in [Plaintiff's] complaint that would permit the Court to infer that [the CRA] must have relayed the dispute to [the furnisher]. Under these circumstances, . . . [Plaintiff] failed to state a claim for violation of the FCRA.").

Access Group argues that Plaintiff's Complaint alleges only that "upon information and belief, the CRAs forwarded Yeska's consumer disputes to Access Group and two other furnishers." (Doc. 16 at ID 199; Doc. 1 ¶ 9). Access Group notes that such an allegation of notice is legally inadequate based on the Court's opinion in *Khalil v. Transunion, LLC*, No. 08-cv-10303, 2009 WL 804165, at *2 (E.D. Mich. Mar. 25, 2009). Finally, Access Group argues that the fact that it had actual notice of the dispute via Plaintiff's March 7 letter is irrelevant; instead, Plaintiff must allege notice from a CRA in

9

order to state a claim under the FCRA, citing *Misialowski v.DTE Energy Co.*, No. 07-14452, 2008 WL 2998948, at *3 (E.D. Mich. Aug. 1, 2008). (Doc. 16 at ID 199).

In *Khalil*, the Court held that Plaintiff failed to state claims that Washington Mutual negligently or willfully violated §1681s-2(b) because the amended complaint "only made a general allegation that 'upon information and belief,' each of the nationwide CRAs had forwarded all information to Washington Mutual." *Khalil*, at *2, cited with approval in *Fluegge v. Nationstar Mortgage, LLC*, 2015 WL 4430062, at *10 (E.D. Mich. July 20, 2015) (also holding that the language "upon information and belief" the CRA contacted defendant about the dispute was insufficient to allege notice, denying leave to amend as futile, and noting that the Sixth Circuit has not yet addressed the notice question). The allegations in the instant complaint in Counts V and VI fail for this same reason.[2] Accordingly, Counts V and VI should be dismissed for this reason alone and without allowing leave to amend.

### 3. Alternative analysis

#### i. Negligent violation; Actual damages under §1681o

Access Group argues that Plaintiff's complaint fails to allege actual damages as required to state a claim for negligent violation of the FCRA. (Doc. 16 at ID 188). Access Group also argues Plaintiff has failed to set forth more than formulaic claims that do not describe how or to what extent Defendant failed to investigate. (Doc. 16 at ID 201).

---

[2] The district courts in the Eastern District of Michigan have been united in this approach and I therefore follow them. However, I note that there are cases outside of our district which would support a contrary result and which are also well-reasoned. *See, e.g., Lang v. TCF Nat'l Bank,* 249 F. App'x 464, 466-67 (7th Cir. 2007) and *Briggs v. Wells Fargo Bank, N.A.*, 2015 WL 1014184, at *4 (E.D. N.Y. Mar. 6, 2015).

Plaintiff contends that he "has suffered damages, mental anguish, suffering, humiliation and embarrassment" under the negligent violation claim in Count V. (Doc. 1 ¶ 45).

To prevail on claims under §1681o, Plaintiff must establish actual damages and a causal relationship between the damages and the furnishers alleged violations of the FCRA. *See Elsady v. Rapid Global Bus. Solutions, Inc.*, No. 09-11649, 2010 WL 742852, at *3 (E.D. Mich. Feb. 26, 2010). "Actual damages may include damages for emotional distress, but only where the plaintiff 'reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements.'" *Nielsen v. E'Trade Mortg. Corp.*, No. 13-cv-11085, 2015 WL 1469847, at *7 (E.D. Mich. Mar. 30, 2015) (granting summary judgment where plaintiff submitted no evidence that he suffered any loss of credit or some other financial harm and referred to only one incident of embarrassment where he had to explain the credit report in a job interview which likely occurred before the first dispute).

In the instant case, Plaintiff has not alleged any specific financial harm nor has he alleged any specific incidents showing emotional distress type harm. Failure to include "specific facts" sufficient to put the defendant on notice of the alleged damages growing out of their alleged negligent violation is fatal. *Firneno v. Radner Law Group, PLLC*, No. 2:13-cv-10135, 2016 WL 5899762, at *5 (E.D. Mich. Sept. 28, 2016) (granting motion to dismiss where plaintiff did not include alongside their claim "any claimed loss of credit, loss of job prospects, or increased risk of identity theft or harm to their credit rating. And although 'actual damages' can include non-economic damages . . . Plaintiffs' complaint contains no factual allegations to support the assertion that they suffered emotional distress

11

and other actual damages"). Accordingly, Count V should be dismissed for this reason as well.

### ii. Willful violation claim

As noted by Access Group, Plaintiff need not prove actual damages when asserting a claim for a willful violation of the FCRA under § 1681n. (Doc. 16 at ID 202) *See Firneno v. Radner Law Group, PLLC*, No. 2:13-cv-10135, 2016 WL 5899762, at *5 (E.D. Mich. Sept. 28, 2016) (recognizing that a claim for "willful violation [under § 1681n] did not need to allege any damages" because statutory damages are available).

In *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69 (2007), the Supreme Court established that willfulness under the FCRA also includes recklessness which is "conduct violating an objective standard, action entailing 'an unjustifiably high risk of harm that is either known or so obvious that is should be known.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 836). In order to sufficiently plead a claim for willful violation of the FCRA, a plaintiff must provide more than conclusory allegations that amount to nothing more than a formulaic recitation of the elements. *See Braun v. Client Servs, Inc.,* 14 F. Supp. 2d 391, 398 (S.D. N.Y. 2014). Alleging a violation, standing alone, does not suffice either. *Stiles v. AMF Lincoln Lanes*, No. 1:13-cv-233, 2013 WL 1136729, at *2 (W.D. Mich. Mar. 5, 2013). In the instant case, Plaintiff's complaint alleges that Access Group "willfully failed to review all relevant information to it" and that he suffered damages as a result of Access Group's "willful failure to perform its respective duties under the FCRA." (Doc. 1 ¶¶ 50, 51). These allegations merely supplant the word "willful" for "negligent," or, at most, recite

a conclusory list of the elements. I therefore suggest that Count VI should be dismissed for failure to state a claim as well.

### E.    Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Access Group's Motion To Dismiss, (Doc. 16) be **GRANTED** and that Counts V and VI should be dismissed.

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which

it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 21, 2016                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: December 21, 2016                    By s/Kristen Castaneda
                                           Case Manager